## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

TREVOR JAMES WELLS,        )
        )
        Plaintiff,        )
        )    **CIVIL ACTION**
v.        )
        )    **No. 16-2803-JWL**
NANCY A. BERRYHILL,[1]        )
Acting Commissioner of Social Security,        )
        )
        Defendant.        )
_____ )

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Disability Insurance benefits (DIB) and Supplemental Security Income (SSI) benefits under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding the Administrative Law Judge's (ALJ) decision is not supported by the record evidence and is inadequately explained, the court ORDERS that the decision shall be REVERSED and that judgment shall be entered

---

[1]On Jan. 20, 2017, Nancy A. Berryhill became Acting Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Berryhill is substituted for Acting Commissioner Carolyn W. Colvin as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this decision.

I.    **Background**

Plaintiff applied for DIB and SSI benefits, alleging disability beginning November 1, 2012.  (R. 14, 184, 192).  Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits.  He argues that the ALJ erred in failing to consider the work questionnaire completed by a former employer, that the residual functional capacity (RFC) assessed by the ALJ is unsupported by the record evidence, and that the ALJ erred at step five of the sequential evaluation process by failing to resolve conflicts between the RFC assessed and the representative jobs testified by the vocational expert (VE).

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S.

389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he

has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's RFC. 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court finds that remand is necessary because the ALJ's decision is not supported by the record evidence. The court notes that when viewing each of the alleged errors separately and narrowly, it might find a basis in the record evidence to support the findings of the ALJ. But, that approach ignores the evidence which detracts from the ALJ's decision, and ignores that the ALJ failed to discuss or explain why that particular

4

evidence does not compel a different decision.  Therefore, in this opinion the court takes a

different tack from its usual practice in Social Security disability cases, and after looking

at the ALJ's decision, considers the evidence which was not discussed in that decision,

and explains why remand is necessary for the Commissioner to account for that evidence

and explain why it does not compel a different decision in this case.

## II.    Discussion

Here, the ALJ found that Plaintiff has a severe combination of impairments of

bipolar disorder, depression, anxiety, narcissistic personality, and substance abuse, but

that his impairments do not meet or medically equal any listed impairment.  (R. 16-17).

He assessed Plaintiff with the RFC for a range of work at all exertional levels with certain

nonexertional limitations requiring that he never climb ladders, ropes, or scaffolds; he

avoid concentrated exposure to unprotected heights and moderate exposure to hazardous

machinery; and that he is limited to unskilled work with occasional contact with the

general public and co-workers, and may not work in high production rate jobs.  (R. 18).

In reaching this RFC assessment, the ALJ summarized the record evidence, including

Plaintiff's allegations, the medical evidence, and the opinion evidence.  Id. at 18-23.

The ALJ found Plaintiff's allegations of disabling symptoms resulting from his

impairments "not entirely credible" (R. 20), and Plaintiff does not allege error in that

determination.  He afforded weight to Dr. Brewington's opinion that "mood-stabilizing

medication will help [Plaintiff] focus."  (R. 22).  He afforded little weight to the opinions

of Ms. Simpson, the social worker who treated Plaintiff's mental impairments, stating that

she was not an "acceptable medical source," that her limitations were not consistent with Plaintiff's "ability to perform normal daily functions, that his condition improves with medication management, that Plaintiff stated in his treatment notes that he was "not depressed just stressed over situations in his life." (R. 22). He also noted that "Ms. Simpson has been a long-time proponent of the claimant's disability application and has actively encouraged the claimant to pursue disability instead of finding employment." Id. The ALJ afforded significant weight to the opinions of the state agency psychological consultants because the consultants reviewed the entire record and are familiar with the agency's evidentiary requirements. He found the consultant's opinions consistent with Plaintiff's level of daily activities, with the fact that Plaintiff is making good progress, and with Plaintiff's performance on mental status examinations. Id. He afforded some weight to Plaintiff's mother's opinion that Plaintiff has some difficulty maintaining social relationships because the opinion is consistent with Plaintiff's statements and with the treatment records. Finally, the ALJ afforded only little weight to the global assessment of functioning (GAF) scores in the record ranging from 20 to 55. Id. at 22-23. He discounted the GAF scores because they are not function-by-function assessments of Plaintiff's mental abilities, they do not measure Plaintiff's ability to meet the mental demands of unskilled work, there is no correlation between GAF scores and the "paragraph B" criteria of the mental impairment listings. Id. at 22. He found that GAF scores are not standardized or designed to predict outcomes, that they are of little legal significance without explanation or supporting detail, and are inconsistent with the

medical records showing improvement and a stable mood when Plaintiff is medication compliant. (R. 22-23). He concluded his RFC assessment: "In sum, the above residual functional capacity assessment is supported by the medical evidence of record, the record as a whole, the State agency findings and the claimant's testimony." (R. 23).

The ALJ found that Plaintiff is unable to perform his past relevant work as a retail manager because it is skilled work, but based upon the VE's response to hypothetical questions at the hearing, he determined that Plaintiff is able to perform work available in the economy represented by jobs such as a Finishing Operator, a Shuttle Spotter, and a Spool Winder. Id. at 23-24. He concluded that Plaintiff has not been disabled within the meaning of the Act from his alleged date of disability through the date of the decision, July 17, 2015. Id. at 24 . Consequently, he denied Plaintiff's applications. Id.

## A.    Arguments Regarding Evidence Not Discussed or Considered

Plaintiff claims the ALJ failed to consider the work questionnaire completed by one of his employers, wherein the employer expressed that Plaintiff had some difficulty accepting instructions and reasonable criticism and had great difficulty cooperating with coworkers because of anger issues or aggressive tendencies. (Pl. Br. 17-18) (citing R. 309-10). He argues that the ALJ "overstated Plaintiff's activities" when he failed to consider the limitations on those activities expressed by Plaintiff and his mother. (Pl. Br. 21). Plaintiff claims that the ALJ did not adequately consider the GAF scores assigned[2]

---

[2]The court notes that in his arguments regarding the ALJ's consideration of GAF scores, both in his Brief in chief and in his Reply Brief, Plaintiff cites to an

which consistently suggested impairment in reality testing or communication, or major impairment in several areas of function, and serious symptoms or serious impairments in functioning.  Id. at 22-23.

Plaintiff argues that while the ALJ found Plaintiff limited to only occasional contact with the general public and co-workers, he did not consider or discuss Plaintiff's ability to interact with supervisors or respond to supervision, despite his mother's opinion that he had difficulty with bosses and authority figures, his own testimony of problems with supervisors, Ms. Simpson's opinion that he would have difficulty accepting instructions and responding to criticism, and his former employer's opinion that he had difficulty accepting instructions and responding to criticism.  Id. at 25.

In a footnote to her Brief, the Commissioner asserts that the ALJ's failure to specifically weigh the former employer's opinion "does not detract from the substantial evidence supporting the ALJ's decision," because the employment at issue occurred before the alleged onset date, and because Plaintiff "was still abusing drugs and alcohol at that time, which certainly could have contributed to his work behavior."  (Comm'r Br. 4, n.2) (emphasis added).  In another footnote, the Commissioner addressed the ALJ's

---

Administrative Message of the Social Security Administration which is allegedly available at http://policynet.ba.ssa.gov/ reference.nsf/links/07222013022250PM.  The court was unable to locate the message using the link provided by Plaintiff, and the court's independent research failed to locate the message cited.  Therefore, the court will not rely on that aspect of Plaintiff's argument.  In the future, counsel should ensure that his links remain viable, or update them to the court, and it would be best to attach a copy of the subject message as an exhibit to his briefs.

evaluation of the GAF scores arguing that "[a]lthough the ALJ appeared to state that he did not consider the global assessment of functioning (GAF) scores to be medical opinions, he nonetheless evaluated those scores and explained his reasoning for finding them to be of little probative value." Id. at 7, n. 3.  With regard to the ALJ's consideration of Plaintiff's interaction with supervisors, the Commissioner argues that "the DOT [(Dictionary of Occupational Titles)] does not distinguish between co-worker and supervisor interaction," the VE referenced jobs which require only occasional interaction with co-workers, and consequently they also require only occasional interaction with supervisors.  Id. at 8.  Therefore, she argues that remand for further consideration for this reason would serve no useful purpose.

In his Reply Brief, Plaintiff argues that the Commissioner's argument regarding the former employer's opinion does not cite any record evidence in support and is merely post hoc rationalization which may not be used by the court to affirm an otherwise infirm decision.  (Reply 1).  He argues that the ALJ did not limit Plaintiff to occasional interaction with supervisors as the Commissioner suggests, but that he simply ignored this issue in his decision despite the evidence of limitations in this regard cited in Plaintiff's Social Security Brief.  Id. at 8.

**B.    Analysis**

Although the ALJ stated that his RFC "assessment is supported by the medical evidence of record, the record as a whole, the State agency findings and the claimant's testimony" (R. 23), that statement is at least arguably incorrect.  Ms. Simpson's treatment

9

records, her opinions, and the GAF score of 20 (R. 606) she assigned arguably do not

support the RFC assessed by the ALJ.  The GAF scores of 30, 35 and 40 assigned by Dr.

Cole arguably do not support the RFC assessed.  (R. 464, 467, 469, 470, 477, 479, 500,

604).  The difficulty accepting instructions and reasonable criticism and difficulty

cooperating with coworkers because of anger issues or aggressive tendencies reported by

Plaintiff's former employer arguably do not support the RFC assessed.  (R. 309-10).  The

limitations on Plaintiff's activities, on his ability to get along with others, and on his

ability to respond to supervision or authority figures as alleged by Plaintiff and his mother

arguably do not support the RFC assessed.  (R. 37-40, 46, 253-68).  The state agency

psychological consultants recognized the former employer's opinion that Plaintiff did not

accept criticism and that he "perhaps" had "restricted social interaction," but they found

him "not significantly limited" in the ability to respond appropriately to criticism.  (R. 63,

66, 74, 77, 88, 91, 100, 103).

Although the ALJ stated the weight accorded to the opinions of Ms. Simpson, of

the state agency psychologists, and of Plaintiff's mother, and the reasons for that weight;

stated reasons for finding Plaintiff's allegations "not entirely credible;" and stated reasons

for discounting GAF scores in general, he did not resolve the ambiguities created in the

record when viewed as a whole.  The state agency psychologists opinions are equivocal

regarding Plaintiff's ability to accept supervision and to respond to criticism, but the

opinions of Plaintiff's former employer, of Ms. Simpson, of Plaintiff's mother, and

Plaintiff's own allegations, generally consistently suggest otherwise.  While the ALJ need

not accept the contrary opinions, he must resolve the ambiguity and explain why he

determined that the state agency psychologists equivocal opinions outweigh the other

opinions.  The fact that he did not even address the former employer's opinion even

though the state agency psychologists acknowledged at least parts of it, simply increases

the ambiguity requiring resolution.

    While the ALJ stated reasons for discounting GAF scores in general, the opinions

reflected in the specific GAF scores of 20, 30, 35, and 40 (with the exception of Dr.

Brewington's GAF score of 55) consistently suggest mental symptoms or impairments of

far greater consequence than the "serious" symptoms or impairments usually recognized

in GAF scores between 41 and 50; Am. Psychiatric Ass'n, Diagnostic and Statistical

Manual of Mental Disorders (hereinafter DSM-IV-TR) 34 (4th ed. text revision 2000);

and greater even than the "moderate functional limitations" the ALJ suggested are

indicated by a GAF score of 50.  (R. 19) (referring without citation to the GAF score of

50 assessed on discharge from Valley Hope Residential Treatment Center in May, 2011.

(R. 619)).  Thus, the ALJ discounted GAF scores in general while ignoring the clear

import of the majority of GAF scores in the record evidence--that Plaintiff's mental

condition is far more limiting than assessed by the ALJ.

    The court does not intend hereby to imply that the record evidence requires a

finding of disability.  However, it requires that the ambiguities be resolved.  There are

reasons (given by the ALJ) that GAF scores are considered suspect, are not specifically

relied upon by the Commissioner, and are no longer used by the American Psychological

Association in DSM-V, and there may be reasons to discount the particular GAF scores assessed in this case.  But, the Commissioner must explain those reasons and must explain why they do not compel a finding of greater limitations than those assessed in the RFC at issue here.  The problem is compounded in this case by the ALJ's failure to discuss the former employer's opinion which tends to reinforce the opinion of Plaintiff's mother and Plaintiff's own statements regarding authority, supervision, and criticism; especially in light of the equivocal opinions of the state agency psychologists in this regard, and the opinion of Ms. Simpson.

The court will not tie the Commissioner's hands in this matter, but this may be a case where the testimony of a psychological expert would be useful in the hearing on remand.

**IT IS THEREFORE ORDERED** that the Commissioner's decision shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent herewith.

Dated this 19th  day of January 2018, at Kansas City, Kansas.


s:/   John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**